ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

LEIF DAUTCH (CABN 283975)
Assistant United States Attorney

     450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102-3495
     Telephone: (415) 436-7534
     FAX: (415) 436-7234
     Leif.Dautch@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 23-MJ-70616 MAG |
|     Plaintiff, | **UNITED STATES' MEMORANDUM IN SUPPORT OF DETENTION MOTION FOR DEFENDANT HANNA TRINH DINH** |
|     v. | |
| HANNA TRINH DINH, | Date:  May 9, 2023 |
|    aka "Hang Trinh Dinh", | Judge: Hon. Laurel Beeler |
| | Time: 10:30 A.M. |
|     Defendant. | |

## I.    Background

On April 12, 2023, Defendant Hanna Trinh Dinh, also known as "Hang Trinh Dinh," learned there was a warrant for her arrest through the FBI, her daughter, and an attorney.  The government entered into negotiations for her to self-surrender.  That did not happen.  Instead of boarding a pre-purchased return flight to Los Angeles to face the charges against her, defendant bought a ticket on Japan Airlines to a non-extradition country and fled to Asia.

The government charged defendant by complaint in case number 23-MJ-1699 in the Central District of California with wire fraud for her role in submitting multiple fraudulent loan applications under the Paycheck Protection Program (PPP) and Economic Injury Disaster Loan (EIDL)

Program.  The affidavit in support of the complaint detailed how defendant and co-defendants submitted

approximately 70 fraudulent loan applications and received more than $3 million in proceeds.  The

affidavit also details a $230 million fraud scheme against the Health Resources and Services

Administration (HRSA) Uninsured Program orchestrated by the defendant's brother and co-defendant—

Anthony Dinh.  The allegations concern the largest HRSA Uninsured Program fraud in the country with

over $150 million paid.  Although defendant has not been charged with health care fraud, she has been

identified as the biller who submitted the fraudulent claims.  *See* Complaint, 23-MJ-1699 (CDCA), Dkt.

No. 1 at ¶¶ 147-48.

     A co-defendant in this case — who did *not* flee law enforcement — was arrested on April 12,

2023, and released on $7 million bail secured by real property and confined to home detention with

location monitoring.  *See* Bond Terms and Conditions, 23-MJ-1699 (CDCA), Dkt. 13.  Even restrictive

conditions such as these would not be enough to reasonably assure the appearance of defendant, who

already became an international fugitive and evaded arrest for weeks, and the safety of the community.

Thus, the Court should order defendant detained.

## II.    Applicable Legal Standard

     Pursuant to the Bail Reform Act, if the Court finds that no condition or combination of

conditions will reasonably assure the appearance of the person as required and the safety of any other

person and the community, the Court shall order the detention of the person before trial. 18 U.S.C.

§ 3142(e)(1).  In making such a determination, the Court shall take into account the available

information concerning:

        (1) the nature and circumstances of the offense charged, including whether the offense
            involves a firearm;

        (2) the weight of the evidence against the person;

        (3) the history and characteristics of the person, including—

            (A) the person's character, physical and mental condition, family ties,
            employment, financial resources, length of residence in the community,
            community ties, past conduct, history relating to drug and alcohol abuse, criminal
            history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or, local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that pretrial release will not guarantee the appearance of the defendant need only be supported by a preponderance of the evidence. *Motamedi*, 767 F.2d at 1406. A finding that a defendant is a danger to the community needs to be supported by clear and convincing evidence. 18 U.S.C. § 3142(f).

The rules concerning admissibility of evidence in criminal trials do not apply to a detention hearing. 18 U.S.C. § 3142(f)(2)(B). The government may proceed in a detention hearing by way of proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996) (citing *United States v. Gaviria*, 828 F.2d 667, 669 (11th Cir. 1987); *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *United States v. Acevedo-Ramos*, 755 F.2d 203, 206-07 (1st Cir. 1985)). The rationale for permitting detention hearings to proceed by way of proffer is that such hearings are "neither a discovery device for the defense nor a trial on the merits." *Smith*, 79 F.3d at 1210. "The process that is due is only that which is required by and proportionate to the purpose of the proceeding." *Id.* That purpose does *not* include the right to confront non-testifying government witnesses. *See United States v. Accetturo*, 783 F.2d 382, 388-89 (3d Cir. 1986).

### III.   Defendant Is a Serious Risk of Flight Because She Has Already Fled Across International Borders After Learning About Her Arrest Warrant

#### A.   Law Enforcement Attempts to Arrest Defendant, and Defendant Fails to Self-Surrender as Proposed

On April 12, 2023, law enforcement attempted to arrest defendant. At approximately 7:32 a.m. Pacific Time, law enforcement called a known telephone number ("defendant's Phone") associated with defendant from outside defendant's residence. Defendant's Phone rang, but no one picked up. After receiving a missed call from defendant around 7:52 a.m., law enforcement called defendant's Phone

again and someone picked up but did not say anything.  At approximately 8:00 a.m., law enforcement called defendant's Phone again.  The phone went to voicemail after ringing, and law enforcement left a voicemail message that there was an arrest warrant for defendant.  At approximately 10:11 a.m., law enforcement contacted the daughter of defendant and informed her of the arrest warrant for defendant. The daughter stated "ok" when law enforcement asked her to notify defendant about the arrest warrant.

Later that day, Assistant United States Attorney Roger Hsieh emailed attorney Tom Brown, an attorney who previously stated that he represented defendant, regarding the arrest warrant for defendant.  AUSA Hsieh requested that defendant surrender the next day (April 13, 2023) or that law enforcement would continue to attempt to effectuate the arrest warrant.  Mr. Brown responded that he would not be representing defendant in the current criminal matter but that defendant "has authorized me to discuss her self-surrender, however."  Defendant did not agree to the surrender date.  Instead, Mr. Brown stated that defendant had left the state before April 12, 2023, and Mr. Brown requested a self-surrender date six days later: "I am authorized to work with you to arrange for her return and self-surrender on Tuesday, April 18."  Mr. Brown represented in the email that defendant "is neither a flight risk nor danger to the community."

AUSA Hsieh responded to Mr. Brown the same day with modified options for defendant to self-surrender, either: (1) on April 13, 2023, by 11:00 a.m. local time at the nearest U.S. Attorney's Office in the district where defendant was currently located (Mr. Brown did not provide defendant's specific location); or (2) on April 14, 2023, by 11:30 a.m. Pacific Time at the U.S. Attorney's Office in Santa Ana, California.  AUSA Hsieh noted that law enforcement would look to execute the arrest warrant if defendant did not self-surrender.  Mr. Brown never replied to the email from the government that provided two self-surrender options, but as noted below, Mr. Brown or his law firm had contact with defendant after the government sent the email with the modified options for self-surrender.  Defendant did not self-surrender on either of those dates.

**B. Call Records Show Defendant Was Aware of the Arrest Warrant through Multiple Communications with an Attorney and Her Daughter**

Co-defendant Anthony Hao Dinh was arrested around 7:32 a.m. on April 12, 2023.  Call records show that from approximately 7:53 a.m. on April 12, 2023, and 4:34 p.m. on April 13, 2023 (converted

from UTC Time to Pacific Time), approximately 12 calls and attempted calls were made to and from defendant's Phone to phone numbers associated with Tom Brown, Brown & White LLP law firm, or Tyler Creekmore, an attorney who works for Mr. Brown.  Multiple calls followed the time when law enforcement initially reached out to defendant and left a message on defendant's Phone regarding her arrest warrant (approximately 8:00 a.m. on April 12), and there were calls after AUSA Hsieh responded to Mr. Brown with the modified options for defendant to self-surrender (approximately 6:38 p.m. on April 12).

Records also show that on April 12, 2023 – just minutes after the call from law enforcement to defendant's daughter in which law enforcement informed her of the arrest warrant for defendant – there were calls between defendant and defendant's daughter that lasted an estimated time of 1 minute 54 seconds and 1 minute 20 seconds, respectively.

### C.  Instead of Returning to Los Angeles From Canada on Her Previously Purchased Flight, Defendant Flees to Vietnam

Law enforcement learned through databases that defendant may have been on a cruise ship that departed from a port in or around Los Angeles, California on April 9, 2023, and that the cruise ship was scheduled to stop in Vancouver, Canada around April 14, 2023.  Airline records show that on March 19, 2023, defendant purchased a return ticket set to depart from Vancouver, Canada to Los Angeles on April 14, 2023.  Although this flight was booked in March and available for defendant to take to return to Los Angeles, California, defendant did not board the flight on April 14 after learning about the warrant for her arrest and after her numerous conversations with counsel.

Instead, on April 14, 2023, defendant purchased a ticket on Japan Airlines from Vancouver, Canada to Vietnam (through Japan) that departed on April 16, 2023.  There did not appear to be a return flight purchased on Japan Airlines.  This was *after* defendant represented on April 12, 2023, to the government that she was willing to self-surrender on the arrest warrant on April 18, 2023.  Defendant stayed in Canada until April 16, 2023, when she departed Vancouver, Canada on a Japan Airlines flight to Narita International Airport.  Then, on April 18, 2023, defendant took a Japan Airlines flight from Tokyo International Airport to Vietnam.

Efforts were made by law enforcement officials to present information about the American arrest warrant to officials in Vietnam.  Despite knowing of her arrest warrant, defendant remained in Vietnam from around April 18, 2023, through around May 4, 2023.  Vietnamese officials eventually apprehended defendant.  Defendant was placed on a flight from Ho Chi Minh City to San Francisco.  When the flight landed at the San Francisco International Airport on the evening of May 4, 2023, defendant was taken into federal custody and made her initial appearance on May 5, 2023.  Defendant's initial appearance hearing was continued to May 9, 2023, almost a month after law enforcement tried to arrest defendant.

## IV.    Any Conditions of Release Are Insufficient

The record contradicts any claim that defendant fleeing to Vietnam was a purported mistake: she was made aware of her arrest warrant through the FBI, her daughter, and multiple communications with her attorney.  Instead of getting on a pre-purchased return flight to Los Angeles after learning of the arrest warrant, she purchased a new ticket and fled to Vietnam.  Attorney Tom Brown consulted with defendant and represented to the government that she was willing to self-surrender on April 18, 2023, and that she was not a flight risk.  Instead, she booked a one-way ticket to Asia and had to be apprehended by Vietnamese officials in order to return her to justice.  Any assurance at this point that she will not flee if released must be viewed against this backdrop, past performance being the best predictor of future behavior.

As noted above, a co-defendant – who did *not* flee law enforcement – was arrested and released on $7 million bail secured by real property and confined to home detention with location monitoring.  Restrictions such as these would be insufficient to reasonably assure the appearance of defendant.  Defendant already chose to flee to a non-extradition country.  Defendant could remove her location monitoring, obtain a fake passport, and flee to another country through Canada or Mexico.  *See, e.g.*, *United States v. Ayvazyan et al.*, 20-CR-579-SVW (CDCA), Dkt. 1230 at 3-4 (describing defendant who surrendered passport and on location monitoring who removed his location monitoring bracelet and absconded)[1]; *see also United States v. Mercedes*, 254 F.3d 433, 437 (2d Cir. 2001) (reversing grant of

---

[1] Defendant Richard Ayvazyan successfully fled to Montenegro despite having surrendered his passport and being on location monitoring.  *See* https://www.justice.gov/usao-cdca/pr/former-san-fernando-valley-couple-extradited-united-states-montenegro-begin-prison.

1  pre-trial release noting that home detention, family assurances, and electronic monitoring not sufficient

2  in face of strong evidence that defendant presented flight risk and danger to community).

3      Further, any arguments that defendant has strong ties to the Central District of California or

4  supportive family members does not assure defendant's appearance at future hearings.  Despite having

5  children and a home in the Central District of California, defendant chose to flee to Vietnam with no

6  apparent plans to return.  Further, defendant was in contact with her daughter and fled to Vietnam with

7  her husband.  Thus, defendant's family members may have assisted defendant in remaining a fugitive.

8      **V.      Defendant is a Danger to the Community**

9      As noted above, defendant and her co-defendants submitted approximately 70 fraudulent loan

10  applications and received more than $3 million in proceeds.  The affidavit in support of the complaint

11  also details a $230 million fraud scheme against the HRSA Uninsured Program which concern the

12  largest HRSA uninsured patient fraud in the country with over $150 million paid.  Although the

13  defendant is not currently charged with health care fraud, she was identified as the biller who submitted

14  the fraudulent claims.  Defendant's fraud scheme took advantage of programs designed to help those in

15  need during the COVID-19 pandemic, and financial fraud is a recognized danger to the community.

16  *See, e.g.*, *United States v. Dupree*, 833 F. Supp. 2d 241, 244-45 (E.D.N.Y. 2011).  Even if confined to

17  her home, defendant could still perpetrate her fraud schemes against others.

18      **VI.     Conclusion**

19      The government respectfully requests that the Court detain the defendant as a serious risk of flight

20  and as a danger to the community.

21

22  DATED:  May 8, 2023                              Respectfully submitted,

23                                                   ISMAIL J. RAMSEY

24                                                   United States Attorney

25                                                   _____/s/_____

26                                                   LEIF DAUTCH
                                                     Assistant United States Attorney

27

28